## THE DONALD.

### (District Court, E. D. Virginia. April 16, 1902.)

1. SHIPPING—CHARTER—DEFAULT IN PAYMENT OF HIRE.

   A charterer, who takes a vessel for a voyage upon an agreement simply to assume a payment of charter hire for which a former time charterer was then in default, is not bound by the terms of the time charter, and, in the absence of any demand by the owner for payment of hire in advance, is not in default for nonpayment before the arrival of the vessel, so as to justify the owner in refusing to comply with the terms of his agreement.

2. SAME—RIGHT TO CHANGE PORT OF DISCHARGE—BREACH.

   The charterer of a vessel, who is also owner of her cargo, has the right, in the absence of outstanding bills of lading, to change her port of destination, and the vessel is liable in rem for a breach of an agreement on the part of the owner to make such change.

3. SAME.

   Evidence considered, and held to establish a contract between the charterer and owner of a ship by which her destination was to be changed en route, and she was to take her cargo to a different port from that originally contemplated, which agreement was broken by the owner.

4. SAME.

   The fact that, at the time of the chartering of a ship by the owner to libelant for a voyage, she was technically under a time charter to another, did not preclude the owner from making an agreement with libelant to change the port of discharge, where, by reason of default in the payment of hire, the owner had the right to declare the time charter forfeited, and it was in fact so treated by all the parties, and where it moreover appeared that the time charterer assented to the change.

In Admiralty. Suit to recover damages for breach of charter.

Hughes & Little, for libelants.

Whitehurst & Hughes, for the Donald.

WADDILL, District Judge. The libel in this case is to recover damages growing out of a breach of contract on the part of the owners of the steamship Donald while said ship was on a voyage from Jamaica to Baltimore; libelants' claim being that the Donald was chartered to bring a cargo of bananas from Jamaica to Baltimore, and that subsequently, and while the ship was en route, its destination was changed, by agreement with the owners, to Norfolk, instead of to Baltimore, and of which change the ship, pursuant to understanding, was duly advised at the Virginia capes, but failed, by direction of the owner, to comply therewith, and proceeded to Baltimore, greatly to libelants' damage.

The owners of the Donald admit having chartered the ship for a continuous voyage from Jamaica to Baltimore, at an agreed price of $1,250 (being the amount that would become due them for the use of the ship during the period for which it was to be used by the Norfolk & West India Fruit & Steamship Company, the holders of a time charter for the ship), but insist that the contract for the voyage had become inoperative because of the failure of the libelants to pay the $1,250 as contemplated; and they deny that any contract was entered into to change the destination of the ship from Baltimore to Norfolk; and, by an amended answer to the libel, the further defense is inter-

posed that at the time of making the alleged contract to change the destination of the ship it was under a time charter to the Norfolk & West India Fruit & Steamship Company, and that, without the consent of said company, the contemplated change could not have been made, and, if made, it was the mere personal undertaking of John A. Donald, with whom it is claimed the contract was made, and that the ship is in no way liable.

These several questions will be considered by the court in the order named.

First. The contract to charter the ship having been confessedly entered into for a particular voyage, at the agreed price of $1,250, was the libelants' conduct, in reference to the payment of that sum, such as should cause a forfeiture thereof? Confessedly not. The amount due as of April 11th by the time charterers, for the period to be covered by the voyage, was $1,250. The telegrams by which the contract was made with the libelants provided for an assumption by the libelants of this sum; and while that amount may have been due in advance, under the terms of the time charter, by the Norfolk & West India Fruit & Steamship Company, it does not follow necessarily that the libelants were to comply with those terms; and while it does seem that the respondent treated the amount as in default, in a letter written libelants, nevertheless, in its further dealings with them, it asserted no such claim; and as late as April 19th, when the ship was en route to this country, it contracted with the libelants for a return voyage; and from the entire dealing it is manifest that it was not the then purpose of respondent to claim any forfeiture or demand immediate payment. Doubtless, had this been done, the request would have been complied with; but it by no means follows from the contract that the money was actually due until the end of the voyage, and the amount was promptly tendered upon the arrival of the ship in port at Baltimore.

Second Was there a contract for the change of destination of the ship from Baltimore to Norfolk? This question can only be determined upon a consideration of all the evidence, and the facts and circumstances surrounding the particular transaction. The two contracting parties, Alexander Stock on behalf of the libelants, and John A. Donald on behalf of the ship, differ entirely as to what occurred in reference to this change of the voyage of the ship. They seem each to be witnesses worthy of credit, and are both gentlemen of unusual intelligence and of large business experience. This conflict will, therefore, have to be determined largely from the circumstances surrounding the transaction, and just what each did at and about that time in reference to the ship's movements. That the libelant Alexander Stock purposed to make and supposed such an arrangement had been made there can be no doubt, for he immediately returned from New York, whither he had been, among other things, for the purpose of making the change to Norfolk, and proceeded there to make arrangements to dispose of the cargo of bananas at that port, ordering large numbers of railroad cars for their transportation, among other things, and at once arranged, through means of the pilots' association, to intercept the ship at the Virginia capes, with a view of its coming to the port of

Norfolk, and upon ascertaining, some two days before the ship's arrival at the capes, that there was some question as to his ability to change the destination of the ship en route, and that Mr. Donald was taking steps to prevent his so doing, immediately communicated with him by wire and phone message, and wrote him, but could receive from him no satisfactory reason for his apparent change of position in reference to the ship's movements. The owners of the cargo, pursuant to their purpose, duly notified the ship at the capes to proceed to Norfolk, instead of Baltimore, which request on their part was ignored, Mr. Donald having given contrary directions.

That the ship actually received the notice from libelants at the capes is denied by the master of the ship, but his evidence in this regard is entirely impeached, and the fact that the notice was given is clearly established by an overwhelming weight of evidence. The conduct, on the other hand, of the witness Donald is also consistent with the fact that the destination of the ship was to be changed as claimed by the libelants, and it, moreover, shows that the witness purposely sought to prevent the ship's change in destination, after the understanding had been had, and his reason for so doing. This is the only reasonable construction that can be placed upon Donald's conduct, in the light of what he did, and of his letter of the 20th day of April to the master of the Donald, to be delivered at the Virginia capes, ordering the ship to proceed to Baltimore, which was evidently not intended to fall into the hands of the libelants. It is quite evident from this letter that some arrangement had been made in reference to the change of destination of the ship, and when the letter is read in the light of the evidence of the writer, Donald, that a mistake had been made in naming libelants the sum of $1,250 as the amount due by the Donald, when in fact some $2,900 was owing, it is quite apparent what had brought about this change of policy, and why Donald wanted the ship to go, as shown by his letter, to Baltimore, instead of to Norfolk; because, as stated in said letter, if the cargo was shipped in the name of the Norfolk & West India Fruit & Steamship Company, the time charterers, he could in Maryland attach the same for the sum of $6,000, due by said company for the hire of the ship David, as well as libel for the entire amount of $2,900, found to be due on account of the Donald.

The solicitude of Donald in reference to the bill of lading; in whose name it was made out; the fact of suddenly placing the whole matter in the hands of counsel; and that he and his counsel quickly proceeded from New York to Baltimore to meet the steamer, and there libeled and sued out a foreign attachment against the cargo, which attachment was dismissed when it appeared that the cargo had not been shipped in the name of the Norfolk & West India Fruit & Steamship Company, but, on the contrary, in the name of libelants, its real owners, and that there was no outstanding bill of lading issued for the cargo,—make this conclusion still stronger. Moreover, while it appears that the position of the Norfolk & West India Fruit & Steamship Company is favorable to the respondent, it is evident from its letter written from Norfolk on April the 22d, four days after it is claimed by libelants that the contract was made to change the destination to Nor-

folk, that such change had been made, and that they, the time charterers, anticipated the arrival of the ship at the port of Norfolk, and were then seeking in that port to dispose of the cargo themselves. From these facts and circumstances, the court has no difficulty in finding as a fact that the agreement was made as claimed by libelants to change the destination of the ship, upon its arrival at the Virginia capes, to Norfolk instead of to Baltimore; and it is equally clear that this contract was broken by the respondent, Donald, which resulted in damage to the libelants, for which they are entitled to recover in this action.

The defense set up by the respondent that John A. Donald, the owner of the ship, was without authority to make such a contract, because the ship at the time was under a time charter to the Norfolk & West India Fruit & Steamship Company, is not well taken, under the facts in this case, and should not defeat the right of recovery, for the reason that it abundantly appears that the shipowner had the right to withdraw the ship from the terms of the time charter, upon the charterers becoming in default in the payment of the hire, and that formal notice of such withdrawal was actually given on April the 22d; and as a matter of fact, in the entire dealings between the parties, by reason of the default and because of the utter insolvency of the time charterers, it is evident that for some time before the contract in question was entered into the parties, as between themselves, in dealing with the ship, were not governed by the provisions of the time charter, and that the owners, although the ship was technically under the said time charter, in dealing with the charterers and others, including the libelants, and with the full knowledge of the time charterers, practically ignored the provisions of the time charter, and, so far from the contract to change the ship's destination at the capes to Norfolk being avoided because of the position of the time charterers, it is clear from their letter of April 22, 1901, written to the libelants, and hereinbefore referred to, that they fully acquiesced in such change. The letter written from Norfolk says: "We write to notify you that, in accordance with our agreement with you, upon the arrival of the steamship Donald in this port, we will take charge of the cargo of bananas, and handle and sell the same for your account. * * *"

The position taken by the respondent, that the ship is not liable, and that only John A. Donald can be held individually for any damages sustained, is likewise untenable, as it is quite clear from the evidence in this case that Donald himself was the real owner of the ship, and that the master, the technical owner and claimant, had no real interest in it, but that the same was operated in his name only with a view of its sailing under the Norwegian flag.

The ship having been chartered by its real owner to the libelants for the purpose of taking the cargo in question from Jamaica to Baltimore, and such cargo having been owned by and consigned to libelants, they had the right to direct the place of destination of the ship, and, there being no valid outstanding bill of lading, it only became necessary to consult the owner at all because the original place of destination had been fixed at Baltimore instead of Norfolk; and upon the agreement being entered into, as herein determined, that the place

of destination would be changed, the libelants had the right to direct such destination, and it was the duty of the master, the representative of the real owner, to obey such direction, and for failure so to do the ship is liable for damages resulting.

A decree of reference may be had, to ascertain the amount of damages sustained by the libelants.